IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

NEIL T. EDMISTON

Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY ADMINISTRATION

Defendant.

Case No. 6:14-cv-01320-MA

OPINION AND ORDER

SHERWOOD J. REESE
DREW L. JOHNSON
Drew L. Johnson, P.C.
1700 Valley River Drive
Eugene, OR 97401

        Attorney for Plaintiff

RONALD K. SILVER
Assistant United States Attorney
1000 S.W. Third Ave., Suite 600
Portland, OR 97204

JORDAN D. GODDARD
Social Security Administration
Office of the General Counsel
701 Fifth Ave., Suite 2900, M/S 221A
Seattle, WA 98104-7075

        Attorneys for Defendant

1 - OPINION AND ORDER

MARSH, Judge

Plaintiff Neil T. Edmiston seeks judicial review of the final decision of the Commissioner of Social Security denying his application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act, 42 U.S.C §§ 401-403, and application for Supplemental Security Income (SSI) disability benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f. This Court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). For the reasons that follow, I affirm the final decision of the Commissioner.

## **FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff protectively filed an application for DIB and SSI on February 19, 2013, alleging disability beginning December 31, 2012, due to depression, post-traumatic stress disorder (PTSD), and blackouts.[1] Plaintiff meets the insured status requirements for a DIB application through September 30, 2015.

Plaintiff's claims were denied initially and upon reconsideration. Plaintiff filed a request for a hearing before an administrative law judge (ALJ). An ALJ held a hearing on April 30, 2014, at which plaintiff appeared with his attorney and testified. A vocational expert, Mark Mann, also appeared at the hearing and testified. On May 23, 2014, the ALJ issued an unfavorable decision.

---

[1] At the hearing, plaintiff amended his alleged onset date to December 31, 2012. Tr. 36.

2 - OPINION AND ORDER

The Appeals Council denied plaintiff's request for review, and therefore, the ALJ's decision became the final decision of the Commissioner for purposes of review.

Born in 1965, plaintiff was 48 years old on the date of the ALJ's unfavorable decision. Plaintiff completed two years of college and obtained certification as a commercial building engineer. Plaintiff has past relevant work as a heating and air conditioning installer; house painter; sales clerk; and case aide.

## THE ALJ'S DISABILITY ANALYSIS

The Commissioner has established a five-step sequential process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 416.920. Each step is potentially dispositive. The claimant bears the burden of proof at steps one through four. *Valentine v. Commissioner Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At step five, the burden shifts to the Commissioner to show that the claimant can do other work which exists in the national economy. *Hill v. Astrue*, 698 F.3d 1153, 1161 (9th Cir. 2012).

At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since December 31, 2012. At step two, the ALJ found that plaintiff had the following severe impairments: PTSD; major depressive disorder (MDD); and polysubstance dependence. At step three, the ALJ found that plaintiff's

3 - OPINION AND ORDER

impairment or combination of impairments, did not meet or medically equal a listed impairment.

The ALJ assessed plaintiff with a residual functional capacity (RFC) to a full range of work at all exertion levels as defined in 20 C.F.R. § 404.1567 but with the following additional nonexertion limitations. Plaintiff can consistently perform simple, routine tasks of one to two steps and occasionally perform detailed tasks; can have occasional contact with the public; and can have structured, superficial interaction with coworkers. Plaintiff also is capable of low stress jobs, defined as those not requiring fast-paced production, with limited supervision and limited interaction with supervisors, and infrequent changes in tasks or setting.

At step four, the ALJ found that plaintiff is unable to perform his past relevant work. At step five, the ALJ concluded that considering plaintiff's age, education, work experience, and residual functional capacity, jobs exist in significant numbers in the national economy that plaintiff can perform, such as wood working machine off-bearer, cleaner, and hand packager. Accordingly, the ALJ concluded that plaintiff has not been under a disability under the Social Security Act from December 31, 2012, through the date of the decision.

## ISSUES ON REVIEW

On appeal to this court, plaintiff contends the following errors were committed: (1) the ALJ failed to properly evaluate

4 - OPINION AND ORDER

plaintiff's RFC; (2) the ALJ erred in posing the hypothetical to the VE; (3) the ALJ erred at step five; and (3) the ALJ failed to evaluate the materiality of plaintiff's substance abuse.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the Commissioner applied the proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010). "Substantial evidence is more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hill*, 698 F.3d at 1159 (internal quotations omitted); *Valentine*, 574 F.3d at 690. The court must weigh all the evidence, whether it supports or detracts from the Commissioner's decision. *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld, even if the evidence is susceptible to more than one rational interpretation. *Batson v. Commissioner Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). If the evidence supports the Commissioner's conclusion, the Commissioner must be affirmed; "the court may not substitute its judgment for that of the Commissioner." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

## **DISCUSSION**

### I. **The ALJ Did Not Err in Assessing the RFC**

Plaintiff argues that the ALJ failed to incorporate a limitation that plaintiff is moderately limited in his ability to respond appropriately to criticism from supervisors in the RFC finding. According to plaintiff, the ALJ gave "great weight" to the opinions of nonexamining physicians, Joshua J. Boyd, Psy.D. and Bill Hennings, Ph.D., but failed include their opinion that plaintiff is moderately limited in his interaction with supervisors. I disagree.

An ALJ's RFC need only incorporate credible limitations supported by substantial evidence in the record and must be consistent with the restrictions identified in the medical testimony. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008); *see Bayliss* v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005)(the ALJ is only required to identify specific, credible limitations in the RFC; "[p]reparing a function-by-function analysis for medical conditions or impairments that the ALJ found neither credible nor supported by the record is unnecessary").

In a July 3, 2013 Mental Residual Functional Capacity (MRFC) Assessment, Dr. Boyd opined that plaintiff was capable of no more than occasional contact with the public but can get along on a casual basis. Tr. 71. Dr. Boyd also opined that plaintiff is able to interact with co-workers in structured interactions or meetings.

6 - OPINION AND ORDER

*Id.* at 72. Dr. Boyd rated plaintiff's social functioning abilities as moderately limited, including a moderate limitation in an ability to accept instructions and respond appropriately to criticism from supervisors.

In a November 5, 2013 MRFC Assessment, Dr. Hennings endorsed Dr. Boyd's opinion that plaintiff is able have occasional contact with the public and can interact with co-workers in structured interactions or meetings. Tr. 89. Dr. Hennings also opined that plaintiff is able to understand and carry out simple one to two step tasks on a consistent basis and can occasionally complete detailed and complex tasks. *Id.* Similar to Dr. Boyd, Dr. Hennings also rated plaintiff's ability to interact with supervisors as moderately limited. *Id.*

I begin by noting that plaintiff does not challenge the ALJ's negative credibility determination. The ALJ discredited plaintiff's testimony for two primary reasons. First, the ALJ documented numerous inconsistencies in plaintiff's reporting of his substance abuse. Tr. 44, 45, 238, 262, 311, 356. Second, the ALJ noted that the record documents a lack of engagement with treatment, including counseling and consistent use of medication. Tr. 41, 400, 421, 438, 440, 441. For example, plaintiff's girlfriend had informed his treating physician that plaintiff was not taking his medications and drinking a lot. Tr. 313. Although plaintiff does not contest the adverse credibility determination, I have carefully reviewed

the record in its entirety, and conclude that the ALJ's finding is readily supported by substantial evidence in the record.

Contrary to plaintiff's argument, the ALJ adopted Drs. Boyd and Hennings' entire MRFC assessments and included additional mental limitations based on the medical record. Specifically, the ALJ found that plaintiff is limited to low stress jobs with limited active supervision and limited interaction with supervisors and infrequent changes in tasks. Tr. 14. In fact, these additional mental limitations are more restrictive than the MRFC assessments by Drs. Boyd and Hennings.

With respect to plaintiff's argument that Drs. Boyd and Hennings opined that plaintiff has a moderate limitation in interacting with supervisors, plaintiff's argument fails. The Ninth Circuit rejected a similar argument in *Israel v. Astrue,* 494 Fed. Appx. 794, 2012 WL 4845578, at *3 (9th Cir. Oct. 12, 2012). Citing to Social Security Administration's Program Operations Manuel System (POMS),[2] the court found that a similar MRFC form instructing physicians to rate claimant's abilities in broad terms such as "moderately limited" in areas of functioning is "merely a worksheet . . . and does not constitute the RFC assessment. [I]t is the narrative written by the psychiatrist . . . that adjudicators

_____

[2] I recognize that POMS does not carry the force of law, but like the Ninth Circuit in *Israel*, I find POMS persuasive in this instance.

are to use as the assessment of the RFC." *Id.* at *2 n. 1.[3] Similarly, here, the MRFC assessment form specifically states that "the questions below help determine the individual's ability to perform sustained work activities . . . the actual [MRFC] assessment is recorded in the narrative discussion." Tr. 71. Thus, the finding that plaintiff is "moderately limited in interacting with supervisors" is not part of the MRFC assessed by Drs. Boyd and Hennings. The ALJ did not reject any portion of the opinions of Drs. Boyd and Hennings because the RFC "adequately capture[d]" the limitations described therein. *Stubbs-Danielson v. Astrue,* 539 F.3d 1169, 1174 (9th Cir. 2008).

In relying on his attorney's definition of "moderately limited in interacting with supervisors," plaintiff argues that the ALJ failed to include in the RFC a limitation of an inability to interact appropriately with supervisors fifteen percent of the workday due to emotional outbursts. This argument also fails.

Aside from plaintiff's subjective reports and his attorney's suggestion, plaintiff does not identify any specific, credited medical evidence, establishing that plaintiff is unable to interact appropriately with supervisors fifteen percent of the workday due to emotional outbursts. In this case, no physician opined that

---

[3] In *Israel*, the MRFC form had separate sections. Section I includes questions with check box answers while Section III instructs physicians to provide a detailed narrative of plaintiff's mental limitations.

9 - OPINION AND ORDER

plaintiff is precluded from interacting appropriately with supervisors for any part of the workday. Indeed, the unchallenged credited medical evidence and medical opinions establish that the ALJ's RFC finding adequately accounts for the plaintiff's difficulty interacting with supervisors. The ALJ specifically discussed and relied on evidence from examining physician, Jennifer Metheny, Ph.D. Dr. Metheny opined that plaintiff has probable difficulties interacting appropriately with others on the job and some impairment with regard to remembering and understanding complex work instructions. Tr. 241.

Citing to the functional evaluation by Dr. Metheny, the ALJ gave Dr. Metheny's opinion "great weight." Tr. 17-18. Consistent with her medical opinion, Dr. Metheny's June 2013 examination report noted that plaintiff appeared anxious with an appropriate affect, and was oriented to person, place, and situation. Tr. 239. Dr. Metheny noted that plaintiff demonstrated good immediate and delayed recall and below average on backwards digit span and serial sevens tasks. Tr. 240. Indeed, the ALJ stated that "in consideration of Dr. Metheny's report and the VA [Veterans Affairs] treatment records, additional limitations are added to accommodate the claimant's difficulty managing stress and dealing with authority." Tr. 18.

Plaintiff's VA treatment records also support the ALJ's RFC finding. For example, the VA's July 2013 examination noted anxious

10 - OPINION AND ORDER

mood, coherent speech with no evidence of suicidal or homicidal ideation and assessed a Global Assessment Function (GAF) score of 50.⁴ Tr. 249. Plaintiff's examining physician, Robert Higgenbotham, M.D. noted that plaintiff had improved with the use of medication. *Id.* In an August 2013 examination, treating physician, Wendy J. Linker, M.D. documented anxious mood, constricted affect but normal speech, thought content and thought process and assessed plaintiff with a GAF score of 45. Tr. 311. Dr. Linker noted that plaintiff reported that he believes he is improving on medication. Tr. 314. In January 2014, Dr. Linker noted a slightly anxious mood with normal speech and thought process. Tr. 439.

To the extent that plaintiff alleges symptoms of emotional outbursts, the ALJ properly discredited plaintiff's allegations. While the record indicates that in May 2013, plaintiff was arrested on charges of domestic violence, treatment records following this incident show improvement in mood, behavior and control. Tr. 276, 249. A July 2013 treatment note indicates that plaintiff reported still experiencing some emotional outbursts, but he had improved overall with medication. *Id.* Aside from this early treatment note,

---

⁴ The GAF scale is used to report a clinician's judgment of the patient's overall level of functioning on a scale of 1 to 100. A GAF of 41-50 indicates serious symptoms (suicidal ideation, severe obsessional rituals frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., few friends, unable to keep a job). *Diagnostic and Statistical Manual of Mental Disorders IV* (DSM-IV), p. 31-34 (4th ed. 2000).

11 - OPINION AND ORDER

the medical record does not document further evidence of emotional outbursts. To be sure, Dr. Linker noted in the most recent treatment note, in March 2014, that plaintiff exhibited an angry but under control mood and adequate insight, judgment, and impulse control. Tr. 423. Because the ALJ's interpretation is rational and is supported by substantial evidence in the record as a whole, it will not be disturbed. *See e.g., Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012)(ALJ's findings must be upheld if they are supported by reasonable inferences drawn from the record).

In sum, the RFC finding restricting plaintiff to limited active supervision and limited interaction with supervisors is consistent with the credited medical evidence of record and relevant Ninth Circuit law. Thus, the ALJ's RFC is supported by substantial evidence. Accordingly, I find no error in the ALJ's RFC assessment.

## II. **The ALJ Did Not Err in the Hypothetical Posed to the VE**

Likewise, plaintiff contends that the ALJ's hypothetical to the VE did not include a limitation that plaintiff would interact inappropriately with supervisors fifteen percent of the workday. Plaintiff's argument is misplaced.

The ALJ is required to pose a hypothetical composed of only limitations that the ALJ found credible and supported by substantial evidence in the record. *Bayliss*, 427 F.3d at 1217; *see also Magallanes v. Brown*, 881 F.2d 747, 756-57 (9th Cir.

12 - OPINION AND ORDER

Case 6:14-cv-01320-MA   Document 14   Filed 07/01/15   Page 13 of 19

1989)(holding that it is proper for an ALJ to limit a hypothetical to restrictions supported by substantial evidence in the record). As discussed above, no physician opined that plaintiff is precluded from interacting with supervisors fifteen percent of the workday. The ALJ appropriately discussed and credited all of the medical testimony and adequately captured plaintiff's work-related limitations. Tr. 15-18. Substantial evidence supports the ALJ's RFC finding, and thus, the ALJ did not err in posing a hypothetical to the VE.

## III. **The ALJ Did Not Commit Reversible Error at Step Five**

At step five, the ALJ can rely on VE testimony in determining whether a claimant can perform other work in the national economy. *See Johnson v. Shalala,* 60 F.3d 1428, 1436 (9th Cir. 1995). "The testimony of a vocational expert constitutes substantial evidence supporting an ALJ's decision." *Osenbrock v. Apfel*, 240 F.3d 1157, 1163 (9th Cir. 2001).

At the hearing, the ALJ posed a hypothetical to the VE incorporating all of the limitations of the RFC finding, with the exception of a limitation excluding fast-paced production jobs. Tr. 57. The VE identified the following jobs and incidence: wood working machine off-bearer, Dictionary of Occupational Titles (DOT) #669.686-034 (2,714 jobs in Oregon and 66,570 jobs nationally); cleaner II, DOT #919.687-014 (512 jobs in Oregon and 36,000 jobs nationally); and hand packager, DOT #920.587-018 (762 jobs in

13 - OPINION AND ORDER

Oregon and 70,273 jobs nationally). *Dictionary of Occupational Titles, available at* 1991 WL 645963; Tr. 57. Then the ALJ included another limitation excluding fast-paced production jobs to the existing hypothetical:

> ALJ: The individual in hypothetical number three is unable to perform fast paced production paced type jobs so I'm talking about jobs where you have an external factor that controls the pace recognized in every job as production requirements but I'm just trying to eliminate the fast paced production pace jobs which might be a cause for additional stress. Would the individual I've described in hypothetical number three be able to perform the jobs you previously identified or jobs in other occupations?

> VE: You know, I think all three of these jobs are not considered the production paced jobs where you have to complete a certain number of items within hours or it's measured throughout the day.

> ALJ: Of where someone else is waiting on you to get your part done before it moves along?

> VE: Right.

Tr. 58.

Plaintiff's attorney also questioned the VE regarding the exclusion of fast-paced production jobs:

> Attorney: Is it fair to state that these low SVP jobs you mentioned would have more supervisor contact than higher SVP jobs?

> VE: No, not these types of jobs. What's normally with the wood working, machine off bearer or with each of the other jobs a certain task is assigned and the supervisor expects the person to complete the task.

\* \* \* \* \*

14 - OPINION AND ORDER

Attorney: And the machine off bearer sounds like a pretty steady pace to me. You're bringing products off a machine.

VE: It's a steady pace but it's not one that, where it's measured by completing so many off bear . . .

Attorney: Right but you have to keep up with a machine though, right?

VE: Right, it's a steady pace.

Tr. 58-59.

Plaintiff contends that the ALJ committed reversible error in failing to ask the VE if his testimony conflicts with the DOT.[5] Plaintiff argues that the ALJ's error is not harmless because the VE's testimony appears to conflict with the DOT with respect to the woodworking machine off-bearer job. I disagree.

An ALJ's failure to ask whether the VE's testimony is consistent with the DOT is harmless procedural error where there is no actual or potential conflict. *Massachi*, 486 F.3d at 1151 n.19. Even assuming that the DOT conflicts with the wood working machine off-bearer job, the ALJ's error is harmless because the ALJ found plaintiff can perform two additional jobs in the national economy. The VE identified two other jobs, cleaner II and hand packager that plaintiff can perform at step five.

---

[5] Plaintiff did not preserve this issue for appeal. Plaintiff is represented by the same attorney that represented him before the ALJ. *See Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999)("[a]t least when claimants are represented by counsel, they must raise all issues and evidence at their administrative hearings in order to preserve them on appeal").

15 - OPINION AND ORDER

Contrary to the plaintiff's assertion,[6] the VE's testimony that plaintiff can perform these two jobs does not conflict with the DOT. A careful review of the record and the DOT's descriptions of these two jobs reveals no patent disparities. Moreover, the DOT's silence as to the production pace of the cleaner II and hand packager jobs do not create an apparent or potential conflict with the VE's testimony. *See Sterba v. Colvin,* 2014 WL 7228989, No. 3:13-cv-00859, *2 (D. Or. Dec. 16, 2014)("no contradiction between the DOT description and the VE's testimony because the VE provided a level of detail absent from the DOT in answering the ALJ's hypothetical"). To be sure, plaintiff does not specifically identify any conflict between the VE's testimony and the DOT with respect to the cleaner II and hand packager jobs.

Moreover, "an ALJ may take administrative notice of any reliable job information, including information provided by a VE. A VE's recognized expertise provides the necessary foundation for his or her testimony. Thus, no additional foundation is required." *Bayliss v. Barnhart*, 427 F.3d at 1218. Here, where the DOT is silent on the issue of production pace, the ALJ took administrative

_____

[6] Plaintiff also argues that the VE's response, "right" to the ALJ's interjected question defining fast pace production indicates ambiguity as to whether the VE comprehended the ALJ's limitation excluding fast-paced production jobs. *See* Pl. Br. (ECF No. 11) at p. 18. After reviewing the VE's entire testimony and the ALJ's hypothetical in context, it is clear that there was no misunderstanding between the VE and the ALJ. Thus, I reject plaintiff's argument.

notice of the VE's testimony that the cleaner II and hand packager jobs do not require fast-paced production. Thus, the ALJ properly relied on the VE's testimony, and substantial evidence supports the ALJ's step five finding. Accordingly, the ALJ did not err in finding that plaintiff can perform other jobs in the national economy at Step Five. *Valentine*, 574 F.3d at 694; *Stubbs-Danielson*, 539 F.d at 1175-76.

## IV.  The ALJ Was Not Required to Conduct a Materiality Analysis

Finally, plaintiff erroneously argues that the ALJ did not conduct a materiality analysis to determine whether plaintiff's substance abuse was a contributing factor to disability.[7] However, as the Commissioner correctly noted, the ALJ was not required to conduct a drug and alcohol materiality analysis because the ALJ found plaintiff not disabled at step five.

If a claimant is found to be disabled and there is medical evidence of substance abuse, the ALJ must determine whether drug addiction or alcoholism "is a contributing factor material to the determination of disability." 20 C.F.R. § 404.1535(a); Social Security Ruling (SSR) 13-2p, *available at* 2013 WL 621536 at *6. "An ALJ *should not proceed* with the analysis under §§ 404.1535 or 416.935 if he or she has not yet found the claimant to be disabled

---

[7] Plaintiff also argues that the medical evidence shows periods of sobriety. Pl.'s Br. (ECF No. 11) at 14-15. However, this is irrelevant as the ALJ considered all of the medical evidence regardless of whether plaintiff was engaging in methamphetamine use or was sober. TR 15-18.

under the five-step inquiry." *Bustamante v. Massanari,* 262 F.3d 949, 955 (9th Cir. 2001)(emphasis added). First, the ALJ must conduct the five-step inquiry without separating out the impact of alcoholism or drug addiction. If the ALJ "finds that claimant is not disabled under the five-step inquiry, then the claimant is not entitled to benefits and there is no need to proceed" with the substance abuse materiality analysis. *Id.*

Here, the ALJ conducted the five step sequential evaluation while considering all the effects of plaintiff's impairments, including his polysubstance dependence. The ALJ found plaintiff's polysubstance dependence was a severe impairment at step two and properly considered the effects of plaintiff's substance abuse in the RFC finding. Tr. 12-13, 15-18. As previously discussed, the ALJ did not err in formulating plaintiff's RFC or in finding that plaintiff could perform work in the national economy at step five. Thus, the ALJ's overall finding that plaintiff is not disabled is supported by substantial evidence. Accordingly, the ALJ was not required to conduct a drug and alcohol materiality analysis and did not err on this issue.

**CONCLUSION**

For the reasons stated above, the Commissioner's final decision is AFFIRMED. This action is DISMISSED.

IT IS SO ORDERED.

DATED this __/__ day of JULY, 2015.

*Malcolm F Marsh*

Malcolm F. Marsh
United States District Judge

19 - OPINION AND ORDER